# Exhibit 2

| CONTRACT INFORMATION | |
|---|---|
| Advertiser: | Only 1 Cosmetics |

| CREATIVE NOTES |
|---|
| Standard creatives are due 5 days before launch date |
| Traffic Creative to AdOpsQA@hearst.com |

HEARST

| | |
|---|---|
| Client: | Only 1 Cosmetics |
| Sales Representative: | Angela Hronopoulos |
| Account Manager: | Suzanne Walls |
| Date: | 12/20/23 |

| Site Name | Placement | Ad Size | Start Date | End Date | Unit Type | Goal | Rate Type | Rate | Total Cost | Programmatic Capability? |
|---|---|---|---|---|---|---|---|---|---|---|
| **Content Sponsorship** | | | | | | | | | | |
| Cosmopolitan, ELLE, Harper's BAZAAR, Good Housekeeping | **Content Package:** Includes *(4x Non-Custom Shot Co-Branded Articles)* | Package | 2/16/24 | 5/30/24 | No Impression Guaranteed | | Flat Rate | Flat Rate | $ 79,500 | No |
| | Cross-Platform Content Roadblock: Super Hero | 1x1 | | | | | | | | |
| | Cross-Platform Content Roadblock | 300x600 | | | | | | | | |
| | Cross-Platform Content Roadblock | 970x90 | | | | | | | | |
| | Cross-Platform Content Roadblock | 300x250 | | | | | | | | |
| | *Social Ignition via Facebook and/or Instagram: Geo-Targeted to US & Canada* | N/A | | | Social Impressions | 2,519,841 | | | | |
| Women's Health | **Content Package:** Includes *(1x Native Custom Article with 1 Editor)* | Package | 2/15/24 | 5/30/24 | No Impression Guaranteed | | Flat Rate | Flat Rate | $ 40,145 | No |
| | Cross-Platform Content Roadblock: Super Hero | 1x1 | | | | | | | | |
| | Cross-Platform Content Roadblock | 300x600 | | | | | | | | |
| | Cross-Platform Content Roadblock | 970x90 | | | | | | | | |
| | Cross-Platform Content Roadblock | 300x250 | | | | | | | | |
| | *Social Ignition via Facebook and/or Instagram: Geo-Targeted to US & Canada* | N/A | | | Social Impressions | 1,125,000 | | | | |
| **Social Activation** | | | | | | | | | | |
| Cosmopolitan | **1x Organic Sponsored** Co-Branded In-Feed TikTok post with 1 Editor | N/A | 2/14/24 | 2/14/24 | Estimated Total Social Followers | 6,056 | Flat Rate | Flat Rate | $ 56,500 | No |
| | **Dark Social Ignition** *via TikTok and/or Beta Carousel Ad offering: Geo-Targeted to US & Canada and Targeting Cosmetics Connoisseur Personas (Client Supplied Assets)* | N/A | 2/14/24 | 5/30/24 | Social Impressions | 1,250,000 | | | | |
| ELLE, Harper's BAZAAR, Town & Country, Women's Health, Cosmopolitan, Good Housekeeping | **Declared Data Unit** *via Instagram and/or Facebook: Geo-Targeted to US & Canada and Targeting Cosmetics Connoisseur Personas* | N/A | 2/26/24 | 5/30/24 | Social Impressions | 1,458,333 | Flat Rate | Flat Rate | $ 51,750 | No |
| | **Dark Social Ignition** *via Facebook and/or Instagram: Geo-Targeted to US & Canada and Targeting Cosmetics Connoisseur Personas (Client Supplied Assets)* | N/A | 1/24/24 | 5/30/24 | Social Impressions | 1,250,000 | Flat Rate | Flat Rate | $ 31,500 | No |
| **Takeover Sponsorship** | | | | | | | | | | |
| Harper's BAZAAR | **Homepage Takeover** | Package | 2/12/24 | 2/18/24 | Impressions | 130,000 | Flat Rate | Flat Rate | $ 9,400 | No |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Super Hero Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Skyline Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x600 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 970x90 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x250 | | | | | | | | |
| Cosmopolitan | **Homepage Takeover** | Package | 2/19/24 | 2/25/24 | Impressions | 280,000 | Flat Rate | Flat Rate | $ 6,700 | No |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Super Hero Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Skyline Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x600 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 970x90 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x250 | | | | | | | | |
| Good Housekeeping | **Homepage Takeover** | Package | 3/4/24 | 3/10/24 | Impressions | 185,000 | Flat Rate | Flat Rate | $ 7,800 | No |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Super Hero Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Skyline Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x600 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 970x90 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x250 | | | | | | | | |
| Women's Health | **Homepage Takeover** | Package | 3/25/24 | 3/31/24 | Impressions | 160,000 | Flat Rate | Flat Rate | $ 6,000 | No |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Super Hero Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Skyline Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x600 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 970x90 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x250 | | | | | | | | |
| ELLE | **Homepage Takeover** | Package | 4/1/24 | 4/7/24 | Impressions | 165,000 | Flat Rate | Flat Rate | $ 8,100 | No |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Super Hero Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Skyline Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x600 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 970x90 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x250 | | | | | | | | |
| Town & Country | **Homepage Takeover** | Package | 4/1/24 | 4/7/24 | Impressions | 190,000 | Flat Rate | Flat Rate | $ 9,100 | No |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Super Hero Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units: Cross-Platform Skyline Unit | 1x1 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x600 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 970x90 | | | | | | | | |
| | Cross-Platform Roadblock + Companion Units | 300x250 | | | | | | | | |
| **Standard Rotational Media** | | | | | | | | | | |
| ELLE, Harper's BAZAAR, Town & Country, Women's Health, Cosmopolitan, Good Housekeeping | **Cross-Platform High Impact Premium Super Hero (Custom 1x Build - Image or Video):** *Geo-Targeted to US & Canada and Targeting Cosmetics Connoisseur Personas* | Custom 1x1 | 2/6/24 | 5/30/24 | Impressions | 1,085,273 | Flat Rate | Flat Rate | $ 37,752 | Yes |
| | **Cross Platform Shoppable Gallery:** *Geo-Targeted to US & Canada and Targeting Cosmetics Connoisseur Personas* | Custom 1x1 | 1/24/24 | 5/30/24 | Impressions | 1,406,375 | Flat Rate | Flat Rate | $ 35,753 | Yes |
| | **Instagram Sharepost Ad:** *Geo-Targeted to US & Canada and Targeting Cosmetics Connoisseur Personas* | 1x1 | 1/22/24 | 5/30/24 | Impressions | 1,510,574 | CPM | $ 13.24 | $ 20,000 | Yes |
| | **Cross Platform Native Assembly Unit (1x Build - Image or Video):** *Geo-Targeted to US & Canada and Targeting Cosmetics Connoisseur Personas* | 1x1 | 1/19/24 | 5/30/24 | Impressions | 3,285,151 | CPM | $ 15.22 | $ 50,000 | Yes |
| | **Cross-Platform ROS Media Banners:** *Geo-Targeted to US & Canada and Targeting Cosmetics Connoisseur Personas* | Package | 1/18/24 | 5/30/24 | Impressions | 3,285,151 | CPM | $ 15.22 | $ 50,000 | Yes |
| | Cross-Platform ROS Media | 300x600 | | | | | | | | |
| | Cross-Platform ROS Media | 970x90 | | | | | | | | |
| | Cross-Platform ROS Media | 300x250 | | | | | | | | |
| | **Added Value Cross-Platform ROS Media** | Package | 1/18/24 | 5/30/24 | Impressions | 1,157,505 | Added Value | Added Value | $ - | No |
| | Added Value Cross-Platform ROS | 300x600 | | | | | | | | |
| | Added Value Cross-Platform ROS | 970x90 | | | | | | | | |
| | Added Value Cross-Platform ROS | 300x250 | | | | | | | | |
| | | | | | Media Total: | 12,840,030 | | $ 18.74 | $ 240,605 | |
| | | | | | Social Total: | 3,964,389 | | | $ 139,750 | |
| | | | | | Content Total: | 3,644,841 | | | $ 119,645 | |
| | | | | | GRAND TOTAL: | 20,449,260 | | | $ 500,000 | |

**HEARST NOTES**

-Rates are valid for 6 weeks after RFP submission.
-Custom Content or Ignition line items must run for minimum of 4 weeks.
-Hearst does not accept blocking tags or pay 3rd Party Vendor Fees for ad serving, brand safety monitoring, viewability tracking or audience measurement.
-Any TBD dates must be selected PRIOR to Insertion Order creation and are selected on a ""first come/first served"" basis.
-Sponsorships, Custom Content, Custom Units and placements with a flat fee are non-cancellable upon signing of the IO.
-Advertisers cannot move sponsorship dates within 14 Days of the sponsorship launch date.
-Inventory will only be held for 14 days upon verbal agreement.
-Custom content executions require a 4+ week lead time and $75K minimum spend. Timeline to be finalized at campaign kick-off.
-Custom media unit executions require a 2+ week lead time and $25K minimum spend. Timeline to be finalized at campaign kick-off.
-Media plans should not be revised without approval from Hearst.
- Screen reader support enabled.
-Media plans should not be revised without approval from Hearst
*Inventory subject to change; inventory will run across the HEARST collection in case of under-delivery.

**Ignition Campaigns:**
Paid social: While client may provide suggestions, final design (i.e. copy and creative) is at the discretion of Hearst's Paid Social Team in order to ensure it is true to the voice of our brand(s) and will resonate with our audience.

**Content delivered via Social Ignition:**
*Impressions delivered against the content roadblock are AV and are not guaranteed. Social impressions will be delivered through Facebook and/or Instagram

**Influencer Rules of Engagement:**
Influencer procurement cannot begin without a fully executed IO & Partner list of up to 3 competing brands
Any changes to deliverables and/or assumptions will be considered out of scope & can have incremental fees
Partner has 5 business days from receipt of talent list to rank in order of preference & send back
Partner is permitted 1 talent list revision requiring a min of 3 business days turnaround time for HDM
Receipt of Partner ranked list is considered an approved list for the program & talent will be secured using this list
If campaign requires wardrobe Partner must accommodate influencer talent sizing
Partner must adhere to talent-related timeline provided by HDM, failure to adhere may impact the launch
Changes/cancellation to a secured Influencer at the Partner's behest will incur fees payable by the Partner up to but not > than 20% of the Influencer fee
If the Influencer is represented by a third-party agency, Partner is subject to Play or Pay fees as dictated by the agency

**Campaign Overall KPI/Objective:** Drive Interest/Engagement - Drive Site Traffic

HEARST *digital media*

| CONTRACT INFORMATION: | |
|---|---|
| Sales Proposal For: | Only 1 Cosmetics |
| Sales Lead: | Angela Hronopoulos |
| Date: | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| Campaign Start: | 1/18/24 |
| Campaign End: | 4/30/24 |

| BILLING INFORMATION | ADVERTISER: | AGENCY: |
|---|---|---|
| Contact Person: | Claire Sinayov | |
| Company Name: | Only 1 Cosmetics | |
| Address 1: | 695-7 Chemin Avila | |
| Address 2: | Suite 302 | |
| City: | Piedmont Quebec | |
| State: | Canada | |
| Zip: | J0R 1K0 | |
| Country: | Canada | |
| Email: | claire@only1.co | |
| Telephone: | 514-245-9362 | |
| Fax: | | |
| Bill To (Choose One): | Advertiser | |
| 3rd Party Ad Server: | | |

| SUMMARYL | | | |
|---|---|---|---|
| Total CPM Amount: | $120,000 | Imps Purchased: | 20,449,260 |
| Flat Fee Amount: | $380,000 | | |
| Other/Offline Amount: | | | |
| SubTotal: | $500,000 | | |
| Agency Discount: | | | |
| Total: | $500,000 | | |

| GENERAL COMMENTS: |
|---|
| Timelines and launch dates are subject to change based on post-sale and asset delivery<br>Standard creatives are due 5 days before launch date<br>Traffic Creative to AdOpsQA@hearst.com |

| ADDENDUMS: | | | | | |
|---|---|---|---|---|---|
| No | x | | | If Yes, Please List: | |

**PROMOTIONAL CONTENT AGREEMENT**

This Agreement dated as of December 20, 2023 sets forth the terms and conditions pursuant to which Cosmopolitan, ELLE, Harper's BAZAAR, Good Housekeeping, and Women's Health Magazine, publications of Hearst Magazine Media, Inc. Hearst and Only 1 Cosmetics will work together on the project described herein.

1. Project: The Project is for Hearst and Partner to develop an advertorial, digital ad units or other content (collectively "Promotional Content") and conduct other mutually beneficial promotional activities as further described at Exhibit A. In consideration for Hearst's efforts in developing the Promotional Content, Partner agrees to purchase advertising ("Advertising") in Magazine as described in Exhibit A.

2. Term: The term of this Agreement commences on the date stated above, and concludes on 4/30/24. Upon conclusion, each party will cease use of any materials of the other bearing the Marks described below.

3. Marks: The marks ("Marks") of Magazine are: Cosmopolitan.com, ELLE.com, Harper'sBAZAAR.com, GoodHousekeeping.com and Women'sHealth.com

The Marks of Partner are: Only 1 Cosmetics

4. Territory: United States and Canada (provided any digital media in the Promotional Content will be available throughout the world). Any print Promotional Content will run in the United States edition of Magazine and any digital Promotional Content will run in the United States version of the Magazine website.

5. Fees: Set forth at Exhibit A

6. Grants of Rights:

a. During the term of this Agreement, Hearst hereby grants to Partner the non-exclusive, royalty-free, worldwide license, with no right to sublicense or transfer, to: (i) electronically reproduce and distribute, and publicly perform and display the Magazine Marks in connection with the Project; and (ii) reproduce and distribute through any media now known or hereafter developed the Magazine Marks in advertisements for and marketing and promotional materials related to the Project.

b. During the term of this Agreement, Partner hereby grants to Hearst the non-exclusive, royalty-free, worldwide license, with no right to sublicense or transfer, to: (i) electronically reproduce and distribute, and publicly display the Partner Marks in connection with the Project; and (ii) reproduce and distribute through any media now known or hereafter developed the Partner Marks and Claim in advertisements for and marketing and promotional materials related to the Project and Magazine.

7. Content of Promotional Material.

a. If the Project requires Hearst to conduct research for the purposes of developing a claim to be used in the Promotional Content, the following terms apply: Research will be conducted via a series of questions regarding Partner's product posed to selected readers of Magazine. In the event that sufficient numbers of readers respond to the questions to generate statistically valid results (meaning a minimum of 200 respondents reply to a follow-up survey about the product and at least 101 of those respondents agree with the proposed claim), and the answers to the questions result in a claim that is mutually acceptable to Hearst and Partner for use in advertising (a mutually acceptable claim referred to as the "Claim"), then the parties will engage in the promotional activities described at Exhibit A hereto. Hearst makes no representations or warranties that sufficient numbers of readers will respond, or that the questions will result in a Claim. Partner acknowledges that Hearst shall not be required to approve for use as a proposed Claim any material that Hearst believes, in its reasonable discretion, fails to accurately reflect the results of the research. Partner further acknowledges and agrees that if the research results in an approved Claim, the basis for the Claim will be described in the Promotional Content as "a survey of [number] Magazine opt-in subscribers who tested [product]". In the event that the research does not result in a Claim, Partner shall have the option to use verbatim statements about the product from one or more survey participants, provided the participants agree to use of their statements as evidenced by a written release, and the statements reflect the sentiment of a majority of the respondents. Partner shall also have the right to include verbatim statements (subject to the foregoing restrictions) in any Promotional Content which also contains a Claim. If the research does not result in a Claim or verbatim statements satisfactory to Partner, then except for the obligation of Partner to purchase the advertising pages described in Exhibit A, which obligation will survive, neither party will proceed with the Project and this Agreement shall terminate without liability. In the event that the research does result in a Claim, Partner will cease all use of the Claim upon termination of this Agreement.

b. If the Project requires the Promotional Content to contain statements about the attributes of Partner's product ("Product Attribute Statements"), including, without limitation, statements comparing Partner's product to those of its competitors or statements attesting to the efficacy of Partner's product as supported by research, then all such Product Attribute Statements shall be supplied by Partner, and Hearst shall have no obligation to participate in the crafting of such Product Attribute Statements.

c. The party specified in Exhibit A (the " FTC Responsible Party")will be responsible to ensure that the content of the Promotional Content (excepting any Claim or Product Attribute Statement) complies in all respects with the Federal Trade Commission's Guides Concerning the Use of Endorsements and Testimonials in Advertising, 16 CFR part 255, as well as the "Native Advertising: A Guide for Business" principles (collectively "FTC Guides"), including without limitation, any requirements relating to paid spokespersons and receipt of consideration.

d. If the Promotional Content is for pharmaceutical products subject to regulation by the FDA, Partner will be responsible for supply the important safety information ("ISI") as required by law. In addition, Partner will be responsible for supplying any experts who are to be featured in the Promotional Content at Partner's expense.

e. Exhibit A sets forth other terms, conditions, and guidelines applicable to the Promotional Content.

f. Exhibit B sets forth additional terms and conditions for digital advertising, as applicable to the Program. Exhibit C sets forth additional terms and conditions for print advertising, as applicable to the Program.

8. Proprietary Rights:

a. Prior to the display by either party of the other party's Marks each party shall obtain the other party's approval of all uses of the other party's Marks. Each party hereby admits and recognizes the other party's exclusive ownership of the other party's Marks and the renown of such Marks worldwide. Each party agrees not to take any action inconsistent with the other party's ownership of its Marks and agrees that any benefits accruing from use of such Marks shall automatically vest in the other party owning the Marks. Neither party may modify for public display any of the other party's logos or Marks, except upon receiving the other party's prior written approval.

b. All proprietary rights in the Promotional Content will vest in Hearst. Hearst hereby grants to Partner the right to use the Promotional Content for the "Permitted Uses/Restrictions Applicable to Digital Content" described at Exhibit A. Any use beyond that so described will require Hearst 's prior written consent and the payment of additional fees to Hearst by Partner. Hearst shall not be required to approve any additional use of the Promotional Content by a competitive magazine. In addition, Partner will be responsible for securing and paying for permissions from third party contributors to the Promotional Content for any proposed additional use, unless Hearst advises that such clearances have already been obtained.

9. Representations and Warranties: Each party represents and warrants to the other, with respect to any Marks or other materials (including, in the case of Partner, any Claims or Product Attribute Statements)(collectively "Materials") provided by it or used by it in connection with this agreement that: such Materials are fully owned and originally created by such party, in the public domain or that such party has procured all rights necessary for their license in accordance with the terms of this agreement; none of such Materials contain any matter that is libelous or obscene or constitutes an injurious formula, recipes, or instructions; none of such Materials infringe any trade name, trademark or copyright; the Materials will not give rise to any claim sounding in false, deceptive, or otherwise actionable advertising; and such Materials are accurate and do not invade or violate any right of privacy, personal or proprietary right, or other law, regulation, or statutory right of any person or corporation. Each party represents and warrants to the other that it will conduct its business relating to the purposes of this agreement in accordance with all applicable laws.

10. Indemnity: Each party ("Indemnitor") shall indemnify and hold harmless the other ("Indemnitee") and its licensees, affiliates, parent and subsidiary companies, and their respective officers, directors, agents and employees from and against liability, actions, claims, demands, losses or damages (including reasonable attorney's fees) caused by or arising out of the breach or alleged breach by the Indemnitor of any of its representations and warranties contained herein, provided, however, that Indemnitor's indemnification shall not apply with respect to such liabilities that may arise in connection with the alteration and/or modifications made to the Materials by Indemnitee. In addition, and notwithstanding the provisions of section 9 above, Partner shall indemnify and hold harmless Hearst and its licensees, affiliates, parent and subsidiary companies, and their respective officers, directors, agents and employees from and against liability, losses or damages (including reasonable attorney's fees) arising from any actions, claims or demands alleging that the Advertising. any Claim or any Product Attribute Statement constitutes false and deceptive advertising and, in the case of pharmaceutical ads, any claims that the ISI was in any way inaccurate or incomplete. The review and/or approval of any Materials by Indemnitee, including Hearst 's review and approval of any Claim or any Product Attribute Statement, shall not constitute a waiver by Indemnitee of the indemnity provided by Indemnitor. The FTC Responsible Party shall indemnify and hold harmless the other party and its licensees, affiliates, parent and subsidiary companies, and their respective officers, directors, agents and employees from and against liability, losses or damages (including reasonable attorney's fees) that the Promotional Content (excepting any Claim or Product Attribute statement therein, which are covered in Partner's indemnity above) violates the FTC Guides. Notwithstanding, the FTC Responsible Party shall have no such obligation where the other party directed the use or placement of specific disclosures against the advice of the FTC Responsible Party, and in such event, the other party shall indemnify the FTC Responsible party and its licensees, affiliates, parent and subsidiary companies, and their respective officers, directors, agents and employees from and against liability, losses or damages (including reasonable attorney's fees) that the Promotional Content (excepting any Claim or Product Attribute statement therein, which are covered in Partner's indemnity above) violates the FTC Guides.

11. Cancellation and Termination: Custom and flat fee programs are non-cancellable upon signing of the Insertion Order. Cancellation of custom program will result in billing for costs incurred by Hearst. In the event of a material breach of this Agreement, the non-defaulting party shall have the right to terminate this Agreement provided it has notified the defaulting party in writing in a timely manner of the breach and the defaulting party has failed to cure the breach within ten (10) days following receipt of notification. The right of termination hereunder shall be without prejudice to any and all other remedies the parties may have at law or in equity. Upon termination or expiration of this Agreement, each party will immediately cease all further use of the other's Material.

12. Waiver/Modification: No modification or amendment to, or waiver of, this Agreement will be binding and valid unless it is in writing and executed by both parties or the party against whom enforcement is sought. No waiver of a breach of any provision of this Agreement or of any default hereunder will be deemed a waiver of any other breach or default of this Agreement.

13. Governing Law: This Agreement will be governed by and construed in accordance with the internal laws of the State of New York, without regard to conflicts-of laws principles thereof. The parties hereto hereby consent to and submit to the jurisdiction of the federal and state courts located in the State of New York, and any action or suit under this Agreement may be brought in any federal or state court with appropriate jurisdiction over the subject matter established or sitting in the State of New York.

14. Assignment: Neither this Agreement, nor any of the rights or obligations hereunder, may be assigned or sublicensed, mortgaged, encumbered or transferred either voluntarily or by operation of law, by either party, without the prior written consent of the other except in connection with a merger or sale of all or substantially all its assets relating to this Agreement, or except in the case of a corporate reorganization.

15. Force Majeure: Neither party shall be liable to the other for any failure of or delay in performance hereunder due to events of force majeure.

16. Relationship of the Parties: Nothing in this Agreement shall create, and the parties do not intend to create, any partnership, limited partnership, agency or joint venture relationship between the parties, that both parties are acting as independent contractors with respect to each other, and that none of the employees of either party will be deemed to be employees of the other party for any purpose. Each party agrees that it is not, and will not hold itself out as the representative, affiliate or agent of the other party for any purpose. Neither party has any right or authority to assume or to create any obligation or responsibility on behalf of the other party for any purpose. Each party will pay and be solely responsible for all contributions, taxes and premiums payable under any and all applicable laws, rules or regulations with respect to employees.

17. Entire Agreement: This Agreement constitutes the entire agreement between the parties hereto and supersedes all previous agreements, promises, proposals, representations, understandings and negotiations (whether written or oral) between the parties with respect to the subject matter hereof.

18. Agency: If this Agreement is executed on Client's behalf by Agency, Agency represents and warrants that it has full authority to bind Client.

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the date first written above.

| | |
|---|---|
| By: Suzanne Walls | By: [signature] |
| [Hearst Magazine Media, Inc. | Only 1 Cosmetics |
| Print Name: Suzanne Walls | Print Name: ANTHONY MASCIAVOLO |
| Title: Account Manager | Title: CEO - PRESIDENT |
| Date: April 8, 2024 | Date: APRIL 7, 2024 |

**EXHIBIT A**

**MEDIA PLAN, PERMITTED USES, AND GUIDELINES APPLICABLE TO PROMOTIONAL CONTENT:**

**Description of Promotional Content and Obligations of the Parties:** 4x Non-Custom Shot Co-Branded Articles on Cosmopolitan, ELLE, Harper's BAZAAR and Good Housekeeping, and 1x Native Custom Article with 1 Editor on Women's Health
**FTC Responsible Party:** HEARST s responsible for ensuring compliance with FTC guidelines and policing any influencers and spokespersons.

**Partner's Advertising Commitment:** $500,000
All print and digital advertising will be subject to the applicable terms and conditions set forth in this Agreement. In the event of any conflict between those terms and conditions and the provisions of this Agreement, the terms of this Agreement shall govern.

**Permitted Uses / Restrictions Applicable to Digital Content:** In addition to display on the Magazine properties listed above, Promotional Content may be displayed solely on Partner's owned and operated media (including social media) for a period of one year following initial launch (provided the Promotional Content may remain online archivally thereafter). Any additional usage, for example, in paid social media or third party media is excluded unless approved in writing by Hearst, which approval may be conditioned on Partner's agreement to pay additional fees for such use. Additionally, (i) any and all use must be in-context, linking back to and/or giving proper attribution to the Magazine sites in the form of a visible text link to the full URL of the original post; (ii) Partner must use final assets only (no working assets) and may not use photos or text separately; (iii) index search must be turned off; (iv) if there is a spot for a canonical URL within the Partner's CMS, the full URL to the content must be entered; and (v) All Advertiser owned and operated sites must include terms and conditions which restrict downloading of images from Promotional Content (other than for personal use), and prohibit republication, retransmission, reproduction, or other use of images from Promotional Content.

**Fees:** N/A
**Promotional Activities to be Conducted by Hearst:** N/A
**Promotional Activities to be Conducted by Partner:** N/A
**If the Activities Include the Conducting of an Event:** N/A

**PROGRAM GUIDELINES**

**General Guidelines Applicable to All Hearst Custom Content Programs:**
· Advertiser will provide all necessary brand guidelines and high-res assets (logos, product shots, social images etc.) by dates required for production. If additional product shots are required, or asset delivery deadline is not met this may incur a Change in Scope and/or delay in timing.
· Non-competing brands may be featured within any Promotional Content.
· Advertiser can designate up to three (3) competing brands that should not be featured in the Promotional Content.
· Advertiser will select products to be incorporated within co-branded content and send all required products to Hearst by dates required for production. If product delivery deadline is not met this may incur a delay in timing.
· Advertiser will define any additional watch-outs/things that are impermissible within content prior to production.
· Advertiser will define any additional product benefits or branding requirements we must incorporate into content prior to production.
· Advertiser will define any additional product benefits or branding requirements must be incorporated into content prior to production.
· Advertiser will send over any relevant press releases.
· Advertiser will consolidate all feedback from all key business partners, and provide rationale where applicable.
· All Comments are due on the dates noted in the timeline; subsequent comments or changes will be considered out of scope and may be addressed via a Change in Scope.
· Advertiser will provide all necessary brand guidelines and high res assets (logos, product shots, social images etc.) by dates required for production. If additional product shots are required, or asset delivery deadline is not met this may incur a Change in Scope and/or delay in timing.
· Advertiser will consolidate all feedback from all key business partners, and provide rationale where applicable.
· All Comments are due on the dates noted in the timeline; subsequent comments or changes will be considered out of scope and may be addressed via a Change in Scope.
· Hearst will work with Advertiser to ensure all FTC Guidelines on endorsements and testimonials are followed.
· Flight dates are subject to change should Partner not adhere to campaign timelines provided by HDM. All campaigns require a minimum of 4 weeks or 8 weeks for influencer-related campaigns.
· Advertiser will have unlimited US-only usage rights to any co-branded content to distribute across all brand-owned media environments without restrictions for a single use in a single context not to be broken apart to be reused to illustrate any other stories. This content is developed for Advertiser with usage rights for a one-year term, which shall commence on first date of publication in any media. If extending beyond the 12-month term additional licensing costs will apply. Advertiser must use final assets only (no working assets) and may not use photo or text separately. The article and photos need to be used as a whole, in their final, published state.
· If Advertiser publishes content on their sites there are 4 requirements – 1. Index search must be turned off. 2. If there is a spot for a canonical URL within their CMS, the full URL to the content must be entered 3. There needs to be a visible text link that credits publisher source and includes full URL to original content post. 4. All Advertiser owned and operated sites must include terms and conditions which restrict downloading of images from Promotional Content (other than for personal use), and prohibit republication, retransmission, reproduction, or other use of images from Promotional Content.
· Content will not be syndicated or distributed beyond Advertiser owned media environments and Hearst properties.

**Program-Specific Guidelines (as Applicable):**

**Co-Branded Content:**
· Assumes 1-2 review rounds for concepts with headlines, up to five (5) days (depending on timeline; includes any legal approval.) Any delays in feedback or additional changes may require a Change In Scope or delay in launch due to additional production fees and timing.
· Assumes 2 reviews of co-branded content, up to 5 days each (depending on timeline; includes any legal approval). Any delays in feedback or additional changes may require a Change In Scope or delay in launch due to additional production fees and timing.
· Logo Treatment will be: "Created by Magazine for Advertiser" at top of post.
· All revisions will be at the editor's discretion.
· Level of Advertiser integration: 30% unless otherwise negotiated.

**Sponsored Content: Refers to purely editorial content, created around approved theme or re-purposed existing content.**
· Assumes 1-2 review rounds for headlines and/or repurposed content only. Advertiser will not have approvals over final content, photo shoots, video, or social. Any additional feedback may require a Change In Scope or delay in launch due to additional production fees and timing.
· Logo Treatment will be: ""Sponsored By Advertiser"" at top of post.

**Co-Branded Social:**
· Facebook Posts must drive to Hearst site or Hearst asset and cannot drive to Advertiser site/asset.
· Instagram posts will not click out to any destination.
· Posts must contain the phrase ""From our Partner XXX"" in body of post or #ad or #sponsored.
· Copy must be created in house and Instagram photos must be custom shot in house, or an editorial image from the Magazine. Twitter and Facebook Posts may include sponsor-provided images at editor's discretion.
· Advertiser may be mentioned in Twitter and Instagram posts with @ symbol.
· Advertiser may include 1 branded hashtag for Instagram and Twitter (may include up to 2 for Instagram).
· All social posts must have images included with copy.
· Assumes that any editor-approved influencer social takeovers on Hearst-owned channels will be on behalf of the Advertiser and that influencers and Advertisers will promote the takeover up to a week in advance.

**Co-Branded Photo Shoot:**
· Advertiser will approve photo concepts during the standard review process of 2 rounds seen in above Co-Branded Content timing. Any delays in feedback or additional changes resulting in re-shoots or review rounds may require a Change In Scope or delay in launch due to additional production fees and timing.
· All experts and models will be selected by Hearst, unless a special guest or collaboration was approved in the pre-sale process. Advertiser will not receive approval. Advertiser will provide reasonable guidelines for selecting models and experts if desired (e.g.. diverse, natural, no tattoos etc.).
· All clothing and styling will be selected by Hearst, unless styling and clothing specifications was approved in the pre-sale process. Advertiser will not receive approval. Advertiser will provide reasonable guidelines for styling and clothes if desired.
· Advertiser attendance on set can be arranged prior to shoot – please provide all contact names/cell phones/emails of those attending ahead of time. All travel & lodgings to and from shoots is at the Advertiser's expense.
· Advertiser to supply multiple approved product/products featured.
· All copy will be at the editor's discretion.
· 48 hours' notice is required to cancel or postpone a shoot. If notice is not received, full shoot day costs for crew still applies.

**Co-Branded Video:**
· Hearst will select all production experts (i.e. Directors of Photography/Audio Operators/Wardrobe stylists/Hair+Make-up Artists), unless a special guest or collaboration was approved in the pre-sale process. Advertiser will not receive approval.
· Advertisers will be presented with initial Video Creative and then have 1 round of review for more detailed script approval (refer to production timeline).
· Advertiser attendance on set is required when shooting product (if Advertiser cannot attend, a Advertiser representative (e.g. Agency rep) who is authorized to approve product shots will need to attend) – please provide all contact names/cell phones/emails of those attending ahead of time. All travel & lodgings to and from shoots is at the Advertiser's expense
· 48 Hours' notice is required to cancel or postpone a shoot. If notice is not received, full shoot day costs for crew still applies.
· Advertiser to supply multiple approved product/products featured.
· All video deliverables will be agreed upon by the Advertiser and Hearst prior to the start of pre production.
· Post Production timeline will be delivered prior to production with Advertiser Notes deadlines. If deadlines are not met, incremental costs may occur.
· Sponsored videos will include a line that says: "Created by Magazine for ADVERTISER". If the video involves talent, it will also include a line that says: "Paid spokesperson for ADVERTISER".

**Influencer Deliverables:** 1x Editor for Women's Health

**Influencer Assumptions and Rules of Engagement:**
· If campaign requires wardrobe, these assumptions are only applicable if client can accommodate sizing to match the influencer talent.
· Influencer procurement cannot begin until there is a fully executed IO (this agreement included) and a list of up to three (3) competing brands submitted by Partner to Magazine.
· All campaigns involving influencers require a minimum of 4 weeks.
· Any changes to the deliverables and/or assumptions will be considered out of scope and can have incremental fees attached.
· Partner has five (5) business days from receipt of all talent lists to rank in order of preference and send back to Magazine.
· Partner is permitted one talent list revision ask. These lists require minimum of 3 business days turnaround time for Magazine.
· Once Magazine receives Partner ranked list – this is considered an approved list for the program talent and Magazine will secure using this list.
· Partner must adhere to Influencer-related timeline provided at the External Kick-Off, failure to adhere to this may impact the flight launch.
· Any changes or cancellations to a secured Influencer at the behest of the Partner will result in incurred fees payable by the Partner up to but no greater than 20% of the Influencer fee.
· Should the Influencer be represented by a third-party agency, Partner is subject to Play or Pay fees as dictated by the agency.

**Co-Branded Influencer Usage:** 1x Editor for Women's Health
· Active promotion during the flight.
· One (1) social post by influencer on Instagram (unless that is not requested).
· Hearst O&O.
· Client O&O + 1 year digital license for archival purposes.
· One-month exclusivity (2 weeks prior launch and two weeks post launch).

**Co-Branded Contests, Sweepstakes, Sampling Programs:**
· If prizing is included, Hearst will notify winner and coordinate fulfillment.
· Advertiser will provide all prizing and related costs within the agreed upon time frame.
· If sampling is included, assumes Advertiser will provide all samples within the agreed upon time frame. Assumes that Hearst will fulfill all sampling programs.
·Assumes Hearst will create all rules, with one round of review for approval by the Advertiser.

**Change of Scope Procedure:**
· Changes to the scope of work will be reviewed between Hearst and Advertiser. Approved changes to scope will be documented as an addendum to this Content Creation Document. Scope changes may impact the project schedule and/or budget.
· Before any changes are made, Advertiser must agree and sign-off on changes.

**[Exhibit B follows]**

**EXHIBIT B:**
**TERMS AND CONDITIONS APPLICABLE TO DIGITAL ADVERTISING**

**In the event the Program involves digital advertising, the following terms and conditions shall apply:**
Terms governed by IAB Terms & Conditions 3.0 (https://www.iab.com/wp-content/uploads/2015/06/IAB_4As-tsandcs-FINAL.pdf) with the exception of the following (which govern in the event of any discrepancy with the IAB Terms & Conditions):

By placing an Insertion Order for advertising on a Web site or in an email of Hearst, Advertiser agrees to the following terms and conditions with respect to such advertising (collectively, "Terms"). All references herein to Advertiser include Advertiser's agency, if there is one, and Advertiser and its agency shall be jointly and severally liable for Advertiser's obligations hereunder.

1. Insertion Order; Optimization; Ad Servers. Hearst agrees to deliver, and Advertiser each agree to pay for the services on the applicable Insertion Order which Insertion Order is incorporated herein by this reference (collectively, "Services"), according to rates specified on the Insertion Order and subject to these Terms. Subject to available inventory and appropriate rate adjustment, positions on the Insertion Order may be adjusted (each, an "Optimization"); provided that the total financial obligation of the Advertiser under the Insertion Order is not reduced. Optimizations are subject to Hearst's prior approval, with applicable terms documented via email, and the confirmation of acceptance by Advertiser via reply email, and such terms shall be binding on Advertiser and made part of the Insertion Order as though fully set forth therein.

2. Ad Servers and Counting. Hearst shall only recognize its third party ad servers and other nationally recognized third party ad servers as may be agreed upon in writing by Hearst and the Advertiser in advance. Any of Advertiser's and/or its agency's third party ad server reporting that is not pre-approved by Hearst in writing is not accepted.
(a) Shortfall in Campaign. If actual impressions delivered with respect to a particular advertisement placement falls below guaranteed levels on the Insertion Order according to the agreed-upon ad server counts by more than 10%, and/or if there is an omission of any advertisement (placement or creative unit), Hearst will continue the campaign until such time as the level of impressions equals the guarantee on the Insertion Order. Makeups of shortfalls are not available (a) when under-delivery or omission of an advertisement is attributable to Advertiser's and/or agency's (i) delayed, incorrect or incompatible Ad Materials or (ii) failure to follow applicable Policies (as defined in Section 4 below), (b) for failure to deliver impressions according to any specific daily or weekly distribution, (c) for impressions marked on the Insertion Order as "estimated" or "not guaranteed", (d) for sponsorship, exclusive or similar placements, or (e) for preemptive placements and/or impressions. This section sets forth the sole and exclusive remedy for any failure of Hearst to fulfill its obligations under the Insertion Order.

(b) Bonus Impressions. Placements for a specified term shall run for the specified time regardless of over-delivery, unless the Insertion Order establishes an impression cap for third party ad server activity, and Advertiser shall not be charged by Hearst for any additional advertisements above any level guaranteed in the Insertion Order. If a previously approved third party ad server is being used and Advertiser notifies Hearst that the guaranteed level stated in the Insertion Order has been reached, Hearst will use commercially reasonable efforts to suspend delivery promptly. If the over-delivery exceeds the guaranteed level in the Insertion Order by an amount in excess of 10% and Advertiser is using a third party ad server, then Hearst will reimburse or credit Advertiser for fees, if any, charged by the third party ad server for trafficking ads in excess of 10% above the guarantee.

3. Cancellation.
(a) Cancellation of custom programs will result in billing for costs incurred. (b) Sponsorship dates cannot be moved after booked.

Cancellation and alteration notification must be sent via email to your sales representative or hms.strategy@hearst.com to be followed by revised paperwork.

4. Ad Materials; Late Creative. Artwork, copy, other content, active URL s and other components of the advertisement (collectively, "Ad Materials") must comply with Hearst 's criteria and specifications for its applicable Web site(s) (collectively, the "Policies"), as updated from time-to-time in Hearst 's discretion. Ad Materials must be received at least five (5) business days prior to the scheduled start date or within the timeframe in the Policies for the applicable ad type if such timeframe is greater. If Ad Materials are not received within such timeframe, or if provided incorrectly or inconsistent with the Policies, then guaranteed impressions and Hearst 's obligations will be reduced pro-rata for the period of time that reserved space was not filled; however, Advertiser will remain liable for the full fee set forth in the Insertion Order for all impressions ordered and inventory reserved. All Ad Materials are subject to Hearst 's approval, which may be denied for any reason in Hearst 's sole discretion. Hearst reserves the right, at any time and for any reason in its discretion, to cancel or cease publication of any Ad Materials, space reservation, or position commitment, without any liability, and in such event, Advertiser will be liable to pay only for those impressions actually served.

5. Payment Terms; Taxes. If Hearst approves credit, Advertiser will be invoiced promptly at the end of each month for amounts set forth on the Insertion Order and payment shall be made to Hearst within thirty (30) days from the date of invoice ("Due Date"). If Advertiser fails to make timely payment, Advertiser will be responsible for all reasonable expenses (including attorneys' fees) incurred by Hearst in collecting such amounts. Hearst reserves the right to suspend credit and/or performance of its obligations if Advertiser fails to make timely payment. Fees on the Insertion Orders are exclusive of all taxes. Advertiser shall be responsible for payment of all taxes, duties and similar charges assessed in connection with the Services or on any payments made by Advertiser hereunder, excluding taxes on Hearst's net income. If agency is the signing party placing an Insertion Order for the benefit of its client, then agency is responsible for all payments hereunder regardless of whether it has received payment from its client. However, Hearst reserves the right to hold agency and Advertiser jointly and severally liable for all payments. No fees payable hereunder may be reduced as a result of any claim, rebate, makegood or other claim of set-off that Advertiser may have or claim to have as a result of an insertion of print advertising in any magazines published by Hearst Magazine Media, Inc. or its affiliates.

6. Warranties; Indemnity. Advertiser hereby represents and warrants to Hearst that Advertiser has the right to publish the Ad Materials in the form delivered and manner published without infringing or violating the rights of any third party or violation of any law, rule or regulation. This representation and warranty also applies to Ad Materials created by Hearst. Advertiser agrees, at its own expense, to indemnify, defend and hold harmless Hearst, its parent companies, employees, officers, directors, representatives, agents and affiliates, against any and all claims, demands, suits, actions, proceedings, damages, liabilities, costs, expenses and losses of any kind (including reasonable attorneys' fees and costs) arising out of or related to (a) the publication of any advertisement hereunder, (b) the Ad Materials or any matter or thing contained in any advertisement, and/or (c) any material of Advertiser to which users can link through any advertisement (including but not limited to, claims of trademark or copyright infringement, libel, defamation, breach of confidentiality, privacy or data protection violation, false, deceptive or misleading advertising or sales practices). HEARST MAKES NO WARRANTY OF ANY KIND WITH RESPECT TO ITS WEB SITES OR SERVICES TO BE DELIVERED HEREUNDER AND HEREBY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. ALL SERVICES ARE PROVIDED ON AN AS IS BASIS WITHOUT GUARANTEE.

7. Limitation of Liability. HEARST SHALL NOT BE LIABLE TO THE ADVERTISER, ITS AGENCY OR ANY THIRD PARTY UNDER OR IN RELATION TO THESE TERMS OR ANY INSERTION ORDER FOR ANY CONSEQUENTIAL, INCIDENTAL, SPECIAL OR INDIRECT DAMAGES OF ANY KIND OR NATURE, UNDER ANY THEORY OF LAW OR EQUITY, AND WHETHER OR NOT HEARST HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL HEARST'S LIABILITY UNDER OR IN RELATION TO THESE TERMS OR ANY INSERTION ORDER EXCEED THE FEES ACTUALLY PAID TO HEARST FOR THE ADVERTISEMENT GIVING RISE TO SUCH LIABILITY.

8. Miscellaneous. Hearst shall not be liable to Advertiser for delay or default in the performance of or completion of Services under the Insertion Order or these Terms, if caused by conditions beyond its control, including but not limited to, any act of God, governmental authority, or war, terrorist act, riot, labor stoppage or slowdown, fire, flood, severe weather, earthquake, accident, telecommunications or network failures, failure of the Internet, or electrical outages. These Terms, together with the Insertion Order, shall be governed and construed in accordance with the laws of the state of New York, without regard to its conflicts of law principles. Any action brought by Advertiser against Hearst relating to advertising must be brought in the state or federal courts in New York, New York and the parties hereby consent to the jurisdiction of such courts. These Terms (together with the IAB terms) and the Insertion Order are the complete and exclusive agreement between the parties with respect to the subject matter and supersede any prior or contemporaneous agreements, negotiations and communications, whether written or oral, between the parties regarding such subject matter. The Terms and Insertion Order (except in the case of Optimizations) may only be modified, or any rights under it waived, by a written document executed by both parties. Hearst will not be bound by any terms or conditions, printed or otherwise, appearing on any purchase order, copy instructions, contract or other documents submitted by Advertiser or its Agency, or expressed orally. To the extent of any conflict, these Terms shall prevail over the Insertion Order. These Terms and the Insertion Order are specifically between and for the benefit of Hearst and Advertiser, and no other person or entity whatsoever (including without limitation, Advertiser's agency) shall have any rights, interests or claims hereunder or be entitled to any benefits under or on account of these Terms or the Insertion Order as a third party beneficiary or otherwise. All obligations and liabilities which by their nature are intended to survive shall survive termination or expiration of these Terms and the Insertion Order for any reason. If the Insertion Order is signed by an Agency, the Agency represents and warrants that it has full authority to bind Advertiser and to enter this Agreement on its behalf.

**PUBLISHER INITIALS:** SW **CLIENT/AGENCY INITIALS:** ____________

| CONTRACT INFORMATION | |
|---|---|
| Sales Proposal For: | Only 1 Cosmetics |

**AUTHORIZED SIGNATURES**

In order to bind the parties to this agreement, their duly authorized representatives have signed their names below on the dates indicated. This agreement (including the Standard Terms incorporated by reference) shall be binding on both parties when signed on behalf of each party and delivered to the other party (which delivery may be accomplished by facsimile transmission of the signature pages hereto).

| HEARST | |
|---|---|
| By: | Suzanne Walls (signature) |
| Print Name: | Suzanne Walls (print or type) |
| Title: | Account Manager (print or type) |
| Date: | April 8, 2024 |

| AGENCY or CLIENT | Only 1 Cosmetics |
|---|---|
| By: | [signature] (signature) |
| Print Name: | ANTHONY MASCIARELLO (print or type) |
| Title: | CEO - PRESIDENT (print or type) |
| Date: | APRIL 7, 2024 |